UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| DEANNA LYNN SANDERS,<br><br>    Petitioner,<br><br>vs.<br><br>CAROLYN COLVIN, Commissioner of Social Security,<br><br>    Respondent. | Case No. 2:11-cv-00512-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Petitioner, Deanna Lynn Sanders's Petition for Review (Dkt. 1), seeking review of the Social Security Administration's final decision to deny her disability benefits. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

I.  ADMINISTRATIVE PROCEEDINGS

On May 9, 2005, Deanna Lynn Sanders ("Petitioner") applied for disability insurance benefits and supplemental security income payments, alleging a disability onset date of July 1, 2000, when she was 27 years old. Petitioner's claim was initially denied on December 6, 2005, and, again, denied on reconsideration on April 4, 2006. (AR 11). On May 25, 2006, Petitioner timely filed a Request for Hearing before an Administrative

**MEMORANDUM DECISION AND ORDER - 1**

Law Judge ("ALJ").  (AR 11).

On February 12, 2008, ALJ Richard A. Say held a hearing in Spokane, Washington, at which time Petitioner, represented by attorney, Louis Garbrecht, appeared and testified.  (AR 11).  An impartial medical expert appeared and testified, and recommended additional testing.  The hearing was continued and a conclusive evaluation was obtained.  On August 26, 2008, there was a video hearing at which Petitioner appeared.  An impartial vocational expert, Paul K. Morrison, also appeared and testified.  At the time of the hearing, Petitioner had past relevant work as a plastics assembler and clothes pricer.  (AR 17).

On October 22, 2008, the ALJ issued a decision, denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act.  (AR 17).  Petitioner requested review from the Appeals Council on November 17, 2008 (AR 367).  Petitioner's request was denied on November 17, 2008 as untimely.

Petitioner appealed to the United States District Court for the District of Idaho.  On November 25, 2009, the district court remanded Petitioner's claims back to the Social Security Administration.  On June 1, 2010, ALJ Moira Ausems held a hearing in Spokane, Washington, at which time Petitioner, represented by attorney, Louis Garbrecht, again appeared and testified.  (AR 436).  An impartial psychological expert, Donna Veraldi, and a vocational expert, Daniel McKinney, appeared and testified.  Petitioner's mother, Eileen Sanders, also was present.  (AR 542).

On July 27, 2010, the ALJ issued a decision denying Petitioner's claims, finding

**MEMORANDUM DECISION AND ORDER - 2**

that Petitioner was not disabled within the meaning of the Social Security Act.  (AR 449). Petitioner requested judicial review before the Appeals Council on July 27, 2010.  The Appeals Counsel adopted the decision of the ALJ as its final decision on September 21, 2011.

Plaintiff now seeks judicial review of the Commissioner's decision to deny benefits.  Petitioner contends the ALJ erred by failing to: (1) find that Petitioner's impairments meet or equal a listing of impairments, (2) give adequate reasons for rejecting the medical opinions of a consultative examiner and comments from Petitioner's treating therapist, and (3) state legally sufficient reasons for rejecting the Petitioner's testimony.  *See* Petitioner's Brief, p.9 (Dkt. 14).

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389,

**MEMORANDUM DECISION AND ORDER - 3**

401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an

**MEMORANDUM DECISION AND ORDER - 4**

administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. DISCUSSION

**A.     Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner has not engaged in SGA since July 1, 2000, the alleged onset date. (AR 438).

**MEMORANDUM DECISION AND ORDER - 5**

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe impairments: scleroderma; hypothyroidism; history of Bell's palsy with mild residuals; fibromyalgia; mood disorder; and anxiety disorder with features of obsessive compulsive disorder ("OCD") and panic disorder. (AR 438).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the

**MEMORANDUM DECISION AND ORDER - 6**

listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *Id*. Here, the ALJ concluded that Petitioner does not have an impairment (or combination of impairments) that meets or medically equals one of the listed impairments. (AR 440).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except the Petitioner would be unable to stand and/or walk for more than 2 hours total in an 8 hour periods and would need a sit/stand option. The Petitioner would be capable of using her hands on a frequent, but not continuous basis. In addition, the Petitioner would be limited to simple, repetitive tasks not involving more than superficial occasional contact with the general public or more than occasional contact with co-workers. (AR 443).

**MEMORANDUM DECISION AND ORDER - 7**

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  If the claimant is able to do other work, she is not disabled; if the claimant is not able to do other work and meets the duration requirement, she is disabled.  Here, the ALJ considered Petitioner's age, education, work experience, and residual functional capacity, and determined that there are jobs existing in significant numbers in the national economy that Petitioner can perform.  (AR 448).

**MEMORANDUM DECISION AND ORDER - 8**

B.      Analysis

Although Petitioner's brief describes both her mental and physical impairments in the "Facts" section, *see* Pet.'s Br., p. 8 (Dkt. 14), the issues raised in the "Legal Argument" section relate only to her mental impairments.[1]  Additionally, the Court has considered Petitioner's issues in an sequence different from that utilized by Petitioner in her brief because the validity of the ALJ's credibility determination impacts the other issues raised.

   1.     Petitioner's Credibility

The ALJ found that Petitioner's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [to be] not credible to the extent they [were] inconsistent with the . . . residual functional capacity assessment."  (AR 445).  Petitioner takes issue with the ALJ's credibility determination.  Pet.'s Br., p. 14 (Dkt. 14).

As the trier of fact, the ALJ is in the best position to make credibility determinations and, for this reason, the ALJ's determinations are entitled to great weight. *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990).  In evaluating a claimant's credibility, the ALJ may consider the claimant's reputation, inconsistencies either in testimony or between testimony and conduct, daily activities, past work record, and

---

[1] Petitioner's brief makes a single sentence reference in the argument section to her physical impairments, arguing that the ALJ should not have relied on Dr. Carraher's opinion because a rheumatologist's separate opinion "confirmed with blood testing and a more detailed physical examination." Pet.'s Br., p. 14 (Dkt. 14).  However, this statement is not supported by a citation to the record or any additional information, such as the rheumatologist's name or any explanation of exactly what kind of opinion was confirmed by testing.  This is not sufficient to raise an issue related to Petitioner's physical capabilities.

**MEMORANDUM DECISION AND ORDER - 9**

testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Light v. Social Security Admin.*, 119 F.3d 789, 791 (9th Cir. 1997). In short, "[c]redibility decisions are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). Nonetheless, if rejecting a claimant's testimony, the ALJ must make specific findings stating clear and convincing reasons for doing so. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). Here, the ALJ did just that, providing several sufficient reasons for calling into question Petitioner's credibility.

The ALJ initially considered the "numerous references in the record of the claimant exaggerating and having a dramatic reporting style on examination." (AR 445). These "numerous references" include the following: (1) the medical expert who testified at the hearing, Dr. Donna Veraldi, explained that "it is very, very hard to know what [Petitioner's] symptoms actually are, because there's evidence that she really over reports them," (AR 552); (2) a physician who examined Petitioner on January 6, 2006 noted that she has "a tendency to excessive behavior," (AR 197); (3) an MCMI-III profile in 2008 "was very elevated and suggestive of marked exaggeration," (AR 326–27); (4) an MMPI-II test was invalid due to an "elevated F-scale score suggesting over reporting of psych problems," (AR 329); (5) another MMPI-II test showed a "significantly elevated" F-scale score because Petitioner "endorsed more than the usual number of unusual or severe symptoms," (AR 345). The physician administering this latter MMPI-II test also noted that, while Petitioner has a dramatic reporting style, she is "generally consistent in

**MEMORANDUM DECISION AND ORDER - 10**

her self report"; however, even with this qualification of the test results, there are "numerous" references in the record to support the ALJ's first rationale for discrediting Petitioner's testimony.

The ALJ also discounted Petitioner's subjective complaints due to inconsistencies in her reports of symptoms and limitations and the lack of treatment records for conditions, such as an obsessive compulsive disorder, before Petitioner applied for benefits. (AR 446). The ALJ noted that, in 2005, in the months preceding Dr. Gardner's mental disability evaluation, Petitioner reported only slight depression and anxiety and made no mention of panic attacks or obsessive compulsive actions. The ALJ found those reports to be inconsistent with Petitioner's allegation that she was incapable of working since 2000 due, in part, to depression and panic attacks. (AR 446). This observation is supported by the record. For example, at a doctor's visit for irregular bleeding in April of 2005, Petitioner reported that she was "not at all" feeling down, depressed, or hopeless, (AR 294), and, in June of 2005, she reported that she had just "slight depression" and anxiety, (AR 286).[2] In contrast, her June 2005 Disability Report alleged depression and panic attacks as conditions that limit her ability to work. (AR 113). The ALJ can

---

[2] Petitioner suggests that one of these references should not be considered because it was a notation on a medical history form submitted to her gynecologist, not to her counselor or a psychologist. *See* Pet.'s Brief, p. 11 (Dkt. 14). However, Petitioner does not dispute the accuracy of the statement, just that it occurred outside of mental health treatment. Petitioner cited no authority that precludes an ALJ from considering contemporaneous and inconsistent statements just because they do not appear in a mental health record.

**MEMORANDUM DECISION AND ORDER - 11**

properly rely on these inconsistencies in the record to support her conclusions as to Petitioner's credibility.

Other reasons provided by the ALJ for her credibility determination are less persuasive, such as the ALJ's reliance on Petitioner's "periodic and sporadic" mental health treatment. (AR 446). Although Petitioner saw a counselor for her mental conditions only about four times a year, (*see* AR 298A), she did not have insurance and argues that her failure to obtain more consistent treatment is caused by her poverty and lack of insurance. Pet.'s Br., p. 16 (Dkt. 14); *see also* AR 193, 500. Respondent notes that Petitioner was charged only $10 per appointment so her lack of insurance should not have been a barrier to obtaining treatment, but for someone with no income even a $10 charge may mean that it is cost-prohibitive to consistently obtain treatment.[3] *See* Resp. Br., p. 10 (Dkt. 18); AR 402–03.

Nonetheless, the ALJ provided sufficient sound reasons for her credibility determination, including Petitioner's over-reporting of symptoms and inconsistencies in Petitioner's statements. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (upholding an ALJ's credibility determination, although two of the ALJ's reasons were invalid). Additionally, the ALJ appropriately considered that even though medications seemed at times to help with Petitioner's symptoms, the Petitioner was sometimes non-compliant in taking her prescribed medication and in

---

[3] Indeed, Petitioner told Dr. Gardner that she "got behind" on the bill for her counselor at a clinic and "could not go back". (AR 210).

**MEMORANDUM DECISION AND ORDER - 12**

seeking treatment as suggested.[4] (AR 446–47). On the sum of the record, the ALJ's credibility determination is supported by clear and convincing reasons and will not be reversed. *See* AR 445–47.

    2.    <u>Providers' Opinions</u>

The ALJ rejected the opinions of Dr. Gerald Gardner, an examining psychologist, and gave little weight to the reports from Skip Frazier, a licensed counselor who treated Petitioner for her mental health issues. Dr. Gardner and Mr. Frazier reported that Petitioner suffers from depression, OCD, and anxiety disorder. (AR 298A; 345). Dr. Gardner opined that "[Petitioner's] obsessive-compulsive symptoms would likely be disruptive in work settings" and her prognosis "appears to be guarded". (AR 346). Mr. Fraizer found it "doubtful" whether Petitioner could be "reliably employed". (AR 298A).

    a.    *Dr. Gerald Gardner*

Petitioner argues that the ALJ improperly rejected Dr. Gardner's opinions. (Pet.'s Br. at 10-13). Dr. Gardner examined Petitioner and assessed her as having significant limitations, in September 2005 (AR 209–15) and March 2008 (AR 338–49). Dr. Gardner's opinions run counter to those of Maximo Callao, who performed a psychiatric

---

[4] *See, e.g.*, (AR 179) (noting that Paxil helped); (AR 180) (noting that Lexapro helped); (AR 222) (in December 2004, Petitioner resumed taking Paxil for the first time in about five years); (AR 180) (in January 2006, Petitioner noticed improvement on a "small dose" of Lexapro; (AR 155) (in June 2007, Petitioner was on Prozac and reported that her mood had improved and her suicidal ideation had resolved); (AR 500) (in June 2008, Petitioner had skipped doses of her thyroid medication); (AR 515) (in September 2009, Petitioner had not gotten into counseling as she had been directed to do in March); (AR 518) (Petitioner had not "call[ed] helping hands or GYN as advised last visit").

**MEMORANDUM DECISION AND ORDER - 13**

review for the State (after reviewing all the evidence in the file and affirming his first review). Dr. Callao opined that Petitioner has a panic disorder with agoraphobia and an obsessive compulsive disorder (AR 134), but with only mild to moderate functional limitations. (AR 139). Dr. Callao also found that Petitioner does not meet the listing criteria for a mental impairment. (AR 139–40). Because Dr. Gardner's opinions are contradicted by another medical opinion in the record, they can be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The record here provides substantial support for the ALJ's conclusions that Dr. Gardner's opinions were largely based on Petitioner's subjective complaints, were not supported by the objective medical evidence, and were inconsistent with Dr. Gardner's own examination findings. (AR 447). Much of the same evidence relied on to support the ALJ's credibility determination as to the Petitioner also supports the ALJ's treatment of Dr. Gardner's opinion. For example, the ALJ concluded that Petitioner's tendency to over-report (AR 445–46) undermined Dr. Gardner's opinions because those opinions were "based largely on the claimant's self-reported symptoms." (AR 447). As discussed above, the ALJ properly supported her finding that Petitioner did not credibly report her symptoms and limitations. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (explaining that "the ALJ took into account those limitations for which there was record support that did not depend on [the claimant's] subjective complaints," and noting that

**MEMORANDUM DECISION AND ORDER - 14**

"[p]reparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary").

Statements from reviewing physician Maximo Callao provide additional support for the ALJ's credibility decision and treatment of Dr. Gardner's opinions. Dr. Callao explained that there was no "evidence to show any OCD" prior to Petitioner's exam in 2005 with Dr. Gardner and he noted that Dr. Gardner's exam "is solely based on Claimant's self report." (AR 141). Moreover, the ALJ points to the testimony of the medical expert at the original hearing, Dr. Klein, who "testified that if the claimant had the degree of symptoms described by Dr. Gardner in his report from the claimant's self-report, she would have exhibited those symptoms at medical visits and that her treatment would have been impacted by such symptoms, which is not the case in this matter." (AR 445).

Thus, the ALJ found Dr. Gardner's statements that "the claimant was able to interact in an appropriate fashion" and she "had normal memory functioning" to be inconsistent with his findings that she "would have moderate limitations with detailed instructions and interacting with others. . . ." (AR 447).[5]

For all these reasons, the ALJ's rejection of Dr. Gardner's opinions is supported by specific and legitimate reasons and will not be disturbed.

---

[5] Additionally, Dr. Gardner reported that Petitioner was "socially pleasant" and appeared "comfortable" with him. (AR 344).

**MEMORANDUM DECISION AND ORDER - 15**

### b. Skip Frazier, LCPC

Petitioner argues that the ALJ improperly rejected the statements of Skip Frazier, a treating counselor. *See* Pet.'s Br., p. 13 (Dkt. 14). The ALJ said that Petitioner's treatment visits with Mr. Frazier were periodic and sporadic and there are no treatment notes in the record from Mr. Frazier or any indication of any quantitative psychological diagnostic testing. (AR 447). Instead, there were simply two one-page letters from Mr. Frazier, dated in 2007 and 2008, generally describing his impressions of Petitioner. *See* AR 148 & 298A.

Petitioner contends that the ALJ violated Social Security Ruling ("SSR") 06-03p, which states that although nurse practitioners, physician assistants, and clinical social workers are not "acceptable medical sources", information from those sources may be based on special knowledge of the individual and may provide insight into the severity of the impairments and how it affects that individual's ability to function. *Id*. In this case, however, the ALJ considered Mr. Frazier's opinions but gave them "little weight" because of the "lack of continuous , repetitive treatment history and lack of objective medical evidence to support his opinion." (AR 447). Even the opinions of treating physicians are given less weight if they are inconsistent with the record as a whole or if the conclusions consist of vague, conclusory statements unsupported by medically acceptable data. *Stormo v. Barnhart*, 377 F.3d 801, 805-06 (8th Cir. 2004); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (lack of objective medical

**MEMORANDUM DECISION AND ORDER - 16**

findings, treatment notes, and rationale to support treating physician's opinion is sufficient reason for rejecting that opinion).

In short, the ALJ considered Mr. Frazier's opinions, but appropriately relied on the medical record in according them little weight. Another person might have weighed the opinions differently, but the course chosen by the ALJ in considering such evidence is properly supported.

      3.    <u>Mental Health Impairment Listings</u>

Petitioner argues that the ALJ erred in finding that Petitioner's mental health issues did not meet or equal a listed impairment at 12.04, or 12.06 B and C. *See* Pet.'s Br., p. 9 (Dkt. 14). The ALJ found only mild restrictions of daily living, moderate difficulties in social functioning, and moderate limitations in concentration, persistence and pace, as well as no episodes of decompensation. (AR 442). The ALJ thoroughly explained why Petitioner's mental impairments did not meet or equal the requirements of Listings 12.04 or 12.06 and properly supported her findings with medical evidence in the record. (AR 440–43).

Petitioner's argument on this issue focuses on the medical records that support her position, most notably, Dr. Gardner's reports. Pet.'s Br., p. 10 (Dkt. 14). As discussed above, however, the ALJ properly supported her credibility finding and, in light of that finding, appropriately weighed and considered Dr. Gardner's opinions in determining that Petitioner's mental impairments do not meet or equal a listing.

**MEMORANDUM DECISION AND ORDER - 17**

Petitioner also takes issue with the medical expert's testimony at the final hearing on this matter. Although Petitioner is correct that this expert, Dr. Veraldi, expressed some discomfort about assessing Petitioner's condition, it was because she felt the Petitioner was over reporting and not because she was unfamiliar with the record or not qualified to make an assessment. (AR 545–54).

Petitioner has failed to meet her burden of proving that her impairments meet or equal the requirements of a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). Accordingly, the ALJ's conclusion that her impairments do not meet or equal a listed impairment will not be reversed on appeal.

## IV.  CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. See *Allen*, 749 F.2d at 579; *Vincent ex. Rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is that put forward by the ALJ, a reviewing court may not substitute its interpretation for that of the ALJ. *Key*, 754 F.2d at 1549.

The evidence upon which the ALJ relied can reasonably and rationally support her conclusions, despite the fact that such evidence may be susceptible to a different interpretation. Indeed, in this case, this Court might well have found differently if was to decide the case *de novo*. However, such a statement is drawn from a cold record, and it is not this Court's role to alter the ALJ's decision without some appropriate basis under the

**MEMORANDUM DECISION AND ORDER - 18**

law for doing so, consistent with its role as a reviewing court only.  Here, the ALJ's decision as to Petitioner's alleged disability is based on proper legal standards and supported by substantial evidence.  Therefore, the Court concludes that the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

Accordingly, the Commissioner's decision is affirmed.

## V.  ORDER

Based on the foregoing, Petitioner's Petition for Review (Dkt. 1) is DENIED, the decision of the Commissioner is AFFIRMED, and this action is DISMISSED in its entirety, with prejudice.

DATED:  **February 24, 2014**.

_Ronald E. Bush_
Honorable Ronald E. Bush
U. S. Magistrate Judge